UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

PB Michigan, LLC,　　　　　　　　　　　　Case No. 23-48504
　　　　　　　　　　　　　　　　　　　　　　Chapter 11
　　　Debtor.
_____/

**DECLARATION OF ALLISON LeMAY IN SUPPORT OF
DEBTOR'S CHAPTER 11 PETITION AND FIRST DAY PLEADINGS**

In support of PB Michigan, LLC's *First Day Motion for Interim and Final Orders (I) Authorizing the Debtor to Use Cash Collateral; (II) Providing Adequate Protection to the Pre-Petition Lenders; and (III) Scheduling a Final Hearing* (the "Cash Collateral Motion"), I, Allison LeMay, state as follows:

1.　　The above-captioned Subchapter V, Chapter 11 proceedings were commenced by the filing of a voluntary Chapter 11 Petition on September 27, 2023.

2.　　Kathryn Betcher and myself are each 50% members of the Debtor, as well as being wholly responsible for the operations, finance, and day-to-day workings of the Debtor's business. I have worked with our bookkeeper and CPAs to prepare tax returns, financial information, and, most relevant to these proceedings, financial projections.

3. Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my firsthand knowledge, my knowledge and review of the Debtor's books and records, or my opinion based upon my experience, knowledge, and information concerning the Debtor's operations and financial condition. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

4. Contemporaneous with the filing of this Declaration, the Debtor filed the Cash Collateral Motion.

5. The Debtor has requested certain relief in the Cash Collateral Motion be granted in order to minimize potential adverse effects of the bankruptcy filings and to minimize the value of the estate.

6. I believe the relief sought in the Cash Collateral Motion is: (a) necessary for the Debtor to make a successful transition to Chapter 11 with minimal interruption to its business; and (b) constitutes a key factor in maximizing and preserving the value of the Debtor's estate.

7. The present Declaration is intended to assist the Court and parties-in-interest in understanding the circumstances that led to the commencement of the Chapter 11 case and in support of the Debtor's Voluntary Petition and Cash Collateral Motion.

## Background

8.  PB Michigan, LLC previously operated two "Pure Barre" exercise franchises in Detroit and Birmingham, Michigan. Pure Barre is an exercise regimen that "focuses on low-impact, small movements that target strength, cardio and flexibility for people of all levels, providing clients with self-focused time to transform the body and mind." When Covid occurred, stay-at-home orders in Michigan completely ceased all operation of fitness and exercise facilities. While the Birmingham location was able to manage through the pandemic, the Detroit location struggled and eventually was forced to close. The closure resulted in the breach of PB Michigan's Detroit lease; the filing of a lawsuit against PB Michigan, Ms. Betcher, and myself, as guarantors to the lease; and the entry of a judgment against the three of us and in favor of the lessor, 28 Grand River, LLC, in the sum of approximately $120,000.

9.  The Debtor employs nine (9) staff and instructors, not including Ms. Betcher and myself. All staff and instructors are independent contractors and receive a Form 1099 documenting their income.

## Purpose and Intent of Bankruptcy

10. The bankruptcy was filed to preserve the going-concern value of the Debtor and allow the Birmingham location to be sold to an approved prospective or current franchisee. Upon information and belief, the liquidated value of the

assets in the Birmingham location is between $40-50,000. Prior to the commencement of this case, the Debtor received two (2) letters of intent for the purchase of the Birmingham location as a going concern. One offer was for $200,000 and the other for $225,000. Each offeror has been approved by the franchisor for the purchase of the Debtor's Birmingham location, and the Debtor intends to have a signed purchase agreement with one of the potential buyers and file a motion to authorize the sale of substantially all of the Debtor's assets very quickly.

11. A sale of the Debtor as a going concern will have the following effect(s): (a) it will allow significantly more funds to be paid to the Debtor's secured creditors than if the tangible assets were liquidated piecemeal; (b) it will allow the franchisor to continue the operations of a Pure Barre studio in Birmingham, Michigan with a new franchisee, and avoid any claims of the franchisor due to breach of the franchise agreement; and (c) because the sale will include the assumption and assignment of the existing Birmingham lease (which will necessarily include curing all arrearages under the lease as a condition of assumption), it will avoid any damages to the landlord resulting from a breach of the lease.

12. Additionally, and because the sale of the Debtor's Detroit operation was not handled properly, the Chapter 11 will allow the proceeds of the sale of the

Detroit location to be paid to the secured creditor, as opposed to the judgment creditor presently garnishing the proceeds.

**Creditors With Liens Against Cash Collateral**

13. The Debtor entered into a 'Merchant Cash Advance' agreement with Pendulum Finance ("Pendulum"), the terms of which may have provided for the sale or factoring of specifically identified receivables to Pendulum. Pendulum filed a UCC financing statement with the State of Michigan statement against the Debtor's assets on May 11, 2018, and a continuation of that UCC financing statement on March 13, 2023. The Debtor anticipates that Pendulum may assert a first priority security interest in the Debtor's Cash Collateral, as defined in section 363(a) of the Bankruptcy Code (the "Cash Collateral"), to secure indebtedness in the approximate amount of $28,000. Debtor neither admits nor denies that Pendulum holds a lien on the Cash Collateral, and will need to review the documents supporting the merchant cash advance agreement.

14. The Debtor borrowed funds from the United States, Small Business Administration ("SBA") pursuant to EIDL loan program. SBA filed a UCC financing statement with the State of Michigan statement against the Debtor's assets on May 29, 2020. The Debtor anticipates that Pendulum may assert a second priority security interest in the Debtor's Cash Collateral to secure indebtedness in the approximate amount of $1,045,000.

15. Debtor anticipates that SBA will claim a first priority security interest in all of the Debtor's Cash Collateral.

16. Corporation Service Company and CT Corporation System, on behalf of unidentified creditors, also filed UCC financing statements with the State of Michigan statement against the Debtor's assets on April 16, 2021, July 30, 2021, and September 1, 2022. Upon information and belief these UCC filings may relate to merchant cash advance companies that advanced high-interest, daily repayment loans to the Debtor. As set forth below, in spite of the fact these creditors have asserted liens against the Debtor, the Debtor does not believe the value of the property of the estate comes anywhere near exceeding the debt owed to Pendulum and the SBA. Accordingly, any junior liens below the SBA are likely completely unsecured.

17. I am informed that no other party-in-interest has an interest in the Cash Collateral.

18. Nothing in this Declaration may be construed as an admission by the Debtor as to the amount, validity, enforceability, nature, extent, or priority of any indebtedness against any of the Debtor's assets.

## Request For Use Of Cash Collateral

19.  As of the Petition Date, I believe the Cash Collateral consisted of the following:

   a. Cash of approximately $554.39; and
   b. Accounts Receivable with a face value of approximately $27,000.00.

20.  Debtor requires the use of Cash Collateral to make payments as are necessary for continuation of the business as shown in the budget attached to the Cash Collateral Motion as Exhibit "A" (the "Budget"). The projected revenue and expenses are based on historical data.

21.  The Budget contains projected revenue and an anticipated budget of necessary expenditures for the 13-week period beginning on the Petition Date.

22.  In order to avoid immediate and irreparable harm to the Debtor and the Debtor's estate, the Debtor must use Cash Collateral in an amount not to exceed $107,373, to pay the immediate operating expenses of the Debtor from the Petition Date through January 7, 2024.

23.  Without the ability to make the payments set forth in the Budget, the Debtor will: (a) suffer irreparable harm; (b) will be unable to continue operations; (c) will not be able to pay its staff and instructors, which will force the closure of the business; and (d) will jeopardize, or even preclude, its ability to sell the business as a going concern.

24. Accordingly, authorizing the Debtor to use Cash Collateral as set forth in the Budget is in the best interests of creditors and all parties-in-interest.

          /s/ Allison LeMay
          Member and Co-Manager

Date: September 28, 2023