UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

PB Michigan, LLC,                                    Case No. 23-48504
                                                     Chapter 11

      Debtor.
_____/

**COVER SHEET FOR DEBTOR'S FIRST DAY MOTION FOR INTERIM
AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO USE CASH
COLLATERAL; (II) PROVIDING ADEQUATE PROTECTION TO THE
PRE-PETITION LENDERS; AND (III) SCHEDULING A FINAL HEARING**

PB Michigan, LLC, (the "Debtor"), has filed a *First Day Motion for Interim
and Final Orders (I) Authorizing the Debtor to Use Cash Collateral; (II)
Providing Adequate Protection to the Pre-Petition Lenders; and (III) Scheduling a
Final Hearing*, which is attached to this Cover Sheet. In accordance with L.B.R.
4001-2(b) (E.D.M.), the Debtor has identified below, by page and paragraph
number, the location in the proposed order accompanying the motion of each of the
following provisions:

| Provision | Contained in Proposed Order | Location in Proposed Order |
|---|---|---|
| (1) Provisions that grant liens on the estate's claims and causes of action arising under Chapter 5 of the Code. | _____ Yes<br><br>__X__ No | Page _____, ¶ _____ |

| | | |
|---|---|---|
| (2) Provisions that grant cross-collateralization protection to the prepetition secured creditor (i.e., clauses that secure prepetition debt with categories of collateral that were not covered by the secured party's lien prepetition) other than liens granted solely as adequate protection against diminution in value of a prepetition creditor's collateral. | _____ Yes<br><br>__X__ No | Page ____, ¶ ____ |
| (3) Provisions that establish a procedure or conditions for relief from the automatic stay. | _____ Yes<br><br>__X__ No | Page ____, ¶ ____ |
| (4) Provisions regarding the validity or perfection of a secured creditor's prepetition liens or that release claims against a secured creditor. | _____ Yes<br><br>__X__ No | Page ____, ¶ ____ |
| (5) Provisions that prime any lien without that lienholder's consent. | _____ Yes<br><br>__X__ No | Page ____, ¶ ____ |
| (6) Provisions that relate to a sale of substantially all of the debtor's assets. | _____ Yes<br><br>__X__ No | Page ____, ¶ ____ |
| (7) Provisions for the payment of professional fees of the debtor or any committees, including any carve-outs for such payments. | __X__ Yes<br><br>_____ No | Page ____, ¶ ____ |
| (8) Provisions for the payment of prepetition debt. | _____ Yes<br><br>__X__ No | Page 3, ¶ 5 |
| (9) Provisions that waive the debtor's exclusive right to file or solicit acceptances of a plan during the time periods specified in 11 U.S.C. § 1121. | _____ Yes<br><br>__X__ No | Page ____, ¶ ____ |

| | | |
|---|---|---|
| (10) Provisions that require the debtor's plan to be on terms acceptable to the secured creditor. | _____ Yes<br><br>__X__ No | Page ____, ¶ ____ |
| (11) Provisions that require or prohibit specific terms in the debtor's plan. | _____ Yes<br><br>__X__ No | Page ____, ¶ ____ |
| (12) Provisions establishing that proposing a plan inconsistent with the order constitutes a default. | _____ Yes<br><br>__X__ No | Page ____, ¶ ____ |
| (13) Provisions that waive surcharge under 11 U.S.C. § 506(c). | _____ Yes<br><br>__X__ No | Page ____, ¶ ____ |
| (14) Provisions that address the rights and obligations of guarantors or co-obligors. | _____ Yes<br><br>__X__ No | Page ____, ¶ ____ |
| (15) Provisions that prohibit the debtor from seeking approval to use cash collateral without the secured creditor's consent. | _____ Yes<br><br>__X__ No | Page ____, ¶ ____ |
| (16) Provisions that purport to bind a subsequent trustee. | _____ Yes<br><br>__X__ No | Page ____, ¶ ____ |
| (17) Provisions that obligate the debtor to pay any of a secured creditor's professional fees. | _____ Yes<br><br>__X__ No | Page ____, ¶ ____ |

Steinberg Shapiro & Clark

/s/ Mark H. Shapiro (P43134)
Attorney for PB Michigan, LLC
25925 Telegraph Road, Suite 203
Southfield, MI  48033
(248) 352-4700
shapiro@steinbergshapiro.com

Date:  September 28, 2023

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

PB Michigan, LLC,                                     Case No. 23-48504
                                                      Chapter 11

      Debtor.
_____/

## DEBTOR'S FIRST DAY MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL; (II) PROVIDING ADEQUATE PROTECTION TO THE PRE-PETITION LENDERS; AND (III) SCHEDULING A FINAL HEARING

PB Michigan, LLC, (the "Debtor"), by and through its proposed counsel,

Steinberg Shapiro & Clark, for its *First Day Motion for Interim and Final Orders*

*(I) Authorizing the Debtor to Use Cash Collateral; (II) Providing Adequate*

*Protection to the Pre-Petition Lenders; and (III) Scheduling a Final Hearing* (the

"Motion"), states:

### Request for Hearing

Through this Motion, the Debtor seeks entry of interim and final orders (i)

authorizing the Debtor to use Cash Collateral (defined below) and to provide

adequate protection to the Pre-Petition Lenders (defined below) in connection with

its use of Cash Collateral, (ii) scheduling a final hearing on this Motion (the "Final

Hearing"), and (iii) establishing notice procedures regarding this Motion.

Debtor must fund its postpetition operations. As a result, Debtor respectfully requests that the Court schedule a hearing on this Motion as soon as possible.

## Jurisdiction

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

3.      Venue of this proceeding and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

## Background

4.      On September 27, 2023 (the "Petition Date"), the Debtor filed its Voluntary Petition for relief (the "Chapter 11 Case") under Subchapter V of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") commencing the above-captioned Subchapter V case (the "Case").[1]

5.      The Debtor continues to operate its business and manage its financial affairs and properties as a debtor-in-possession pursuant to §§ 1107(a) and 1108. No official committee of creditors holding unsecured claims or other committees have been formed under § 1102, and no committee is expected to be formed consistent with § 1181 (a).

---

[1] Unless stated otherwise, all statutory references herein are to the Bankruptcy Code.

6.    Allison LeMay and Kathryn Betcher ("LeMay" and "Betcher") are the Members and persons in control of the Debtor.

7.    The *Declaration of Allison LeMay in Support of Debtor's Chapter 11 Petition and First Day Pleadings* ("LeMay Declaration") describes Debtor's background and the circumstances leading to its bankruptcy filing. *See* LeMay Declaration at Dkt. No. 6.

### The Debtor's Business

8.    Debtor is a Michigan limited liability company established in 2016 by LeMay and Betcher, each as 50% members. *See* Dkt.t. No. 6, paragraph 2.

9.    Prior to the Petition Date, the Debtor operated two (2) Pure Barre fitness franchises, one of which was located in Detroit, Michigan, and the other in Birmingham, Michigan. *See* Dkt. No. 6, paragraph 8.

10.   The Debtor employs nine (9) persons as independent contractors. *See* Dkt. No. 6 at paragraph 9.

### Cash Collateral

11.   On the Petition Date, the Debtor, without admission, believes its cash collateral (the "Cash Collateral") consists of the following:

   a.   Cash of approximately $554.39; and
   b.   Accounts Receivable with a face value of approximately $27,000.00.

*See* Dkt. No. 6 at 19.

12.     Without the ability to make the payments as set forth in the Budget (defined below), (i) the Debtor will suffer irreparable harm; (ii) its reputation will be impaired; (iii) it will be unable to pay the ordinary expenses of operating its business; (iv) its employees will abandon it because the Debtor will be unable to pay for their services, and (v) the Debtor will be forced to cease operating. *See* Dkt. No. 6 at  23.

13.     The majority of the Debtor's value arises from its on-going operations and its ability to conduct fitness classes. If the Debtor ceases operating and is forced to liquidate, its value will be substantially reduced. *See* Dkt. No. 6 at 16.

**Nature of Debt**

14.     The Debtor entered into a 'Merchant Cash Advance' agreement with Pendulum Finance ("Pendulum"), the terms of which may have provided for the sale or factoring of specifically identified receivables to Pendulum. Pendulum filed a UCC financing statement with the State of Michigan statement against the Debtor's assets on May 11, 2018, and a continuation of that UCC financing statement on March 13, 2023. The Debtor anticipates that Pendulum may assert a first priority security interest in the Debtor's Cash Collateral to secure indebtedness in the approximate amount of $28,000.

15.     Debtor anticipates that Pendulum will claim a first priority security interest in all of the Cash Collateral, as defined in section 363(a) of the Bankruptcy

Code. Debtor neither admits nor denies that Pendulum holds a lien on the Cash Collateral, and will need to review the documents supporting the merchant cash advance agreement.

16.     The Debtor borrowed funds from the United States, Small Business Administration ("SBA") pursuant to EIDL loan program. SBA filed a UCC financing statement with the State of Michigan statement against the Debtor's assets on May 29, 2020. The Debtor anticipates that Pendulum may assert a second priority security interest in the Debtor's Cash Collateral to secure indebtedness in the approximate amount of $1,045,000.

17.     Debtor anticipates that SBA will claim a first priority security interest in all of the Debtor's Cash Collateral.

18.     Corporation Service Company and CT Corporation System, on behalf of unidentified creditors, also filed UCC financing statements with the State of Michigan statement against the Debtor's assets on April 16, 2021, July 30, 2021, and September 1, 2022. Upon information and belief these UCC filings may relate to merchant cash advance companies that advanced high-interest, daily repayment loans to the Debtor. As set forth below, in spite of the fact these creditors have asserted liens against the Debtor, the Debtor does not believe the value of the property of the estate comes anywhere near exceeding the debt owed to Pendulum

and the SBA. Accordingly, any junior liens below the SBA are likely completely unsecured.

19.     Nothing in this Motion may be construed as an admission with respect to liability for any indebtedness, nor should anything within this Motion be construed as an admission with respect to the extent, status, validity, and enforceability of any lien against any of the Debtor's assets.

## Request for Use of Cash Collateral

20.     Debtor is confident that its post-petition operations will be profitable and that it will be able to demonstrate its ability to remain profitable during this bankruptcy proceeding and beyond. *See* Dkt. No. 6 at 20.

21.     Debtor has prepared an operating budget which contains projected revenue and an anticipated budget of necessary expenditures for the 13-week period beginning on the Petition Date (the "Budget"). *See* Dkt. No. 6 *and* Budget attached as Exhibit "A".

22.     In order to avoid immediate and irreparable harm to the Debtor and the Debtor's estate, the Debtor must use Cash Collateral in an amount not to exceed $107,373, to pay the immediate operating expenses of the Debtor from the Petition Date through January 1, 2023. *See* Dkt. No. 6 at paragraph 22 and Exhibit A.

23.     As part of its request to use Cash Collateral, the Debtor is requesting that this Court allow it to escrow, on a monthly basis, $1,200 into a debtor-in-possession account earmarked to pay the professional fees incurred by its legal counsel and the Subchapter V Trustee in connection with the bankruptcy proceeding to the extent the fees are allowed by this Court (the "Professional Fees").[2]

24.     The Debtor submits that the Professional Fees will remain property of the estate, until such time that Professional Fees are allowed by Court order and will be free and clear of the liens, claims, and encumbrances of any secured creditors. This arrangement provides a practical and necessary mechanism for the payment of allowed administrative expenses to Debtor's retained legal counsel and the Subchapter V Trustee.

## Adequate Protection

25.     The Bankruptcy Code does not explicitly define "adequate protection," but section 361 of the Bankruptcy Code provides a nonexclusive list of how a debtor-in-possession may provide it, including: (i) periodic cash payments, (ii) additional or replacement liens, or (iii) other relief resulting in the "indubitable equivalent" of the secured creditor's interest in such property.

---

[2] The Debtor has filed or will file an *Application to Employ Steinberg Shapiro & Clark as Counsel for the Debtor* and *Application to Employ Myers and Myers as Special Counsel for the Debtor* on the Petition Date.

26.     What constitutes adequate protection must, therefore, be decided on a case-by-case basis. *See, e.g., In re Masello,* 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); *see also, In re O'Connor,* 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin,* 761 F.2d 472 (8th Cir. 1985). The proposed adequate protection is intended to protect a secured creditor from diminution in the value of its pre-petition collateral while the Debtor uses it. *See In re 494 Central Park Avenue Corp.,* 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); *In re Beker Indus. Corp.,* 58 B.R. at 736; *In re Hubbard Power & Light,* 202 B.R. 680 (Bankr. E.D.N.Y. 1996).

27.     As adequate protection under sections 363 and 361 of the Bankruptcy Code for any security interests that First Merchants may assert, and to the extent that the Debtor uses Cash Collateral and does not replace same, Debtor offers replacement liens in all such types and descriptions of collateral which secured Pendulum and the SBA's pre-petition liabilities and which are created, acquired or arise after the Petition Date.[3]

28.     The Debtor will thereby be able to provide its secured creditors with adequate protection through its continuing operations and through the replacement

---

[3] To the extent that this Court determines that any other creditor has an interest in Cash Collateral, Debtor will offer that creditor substantially the same treatment offered in tis Motion. The priority of the replacement liens provided to such creditor, if any, shall remain consistent with the priority of the lien held by that creditor prior to the Petition Date.

liens. *See, e.g.,* <u>Matter of Pursuit Athletic Footwear, Inc.,</u> 193 B.R. 713 (Bankr. D. Del. 1996).[4]

29.     On the basis of the adequate protection submitted above, the Debtor submits that it should be granted authority to use its Cash Collateral.

### Interim Approval of the Use of Cash Collateral

30.     Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to use cash collateral pursuant to § 363, and to obtain credit under § 364 may not be commenced earlier than 14 days after the service of such motion. Upon request, however, the Court can conduct a preliminary, expedited hearing on such a motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable to the Debtor's estate.

31.     To avoid a disruption in the Debtor's operations pending the Final Hearing, the Debtor requests that the Court schedule and conduct a preliminary hearing on the Motion and authorize the Debtor from and after the entry of the Interim Order until the Final Hearing to use Cash Collateral pursuant to the terms of the Interim Order.

---

[4] In <u>Pursuit Athletic Footwear</u>, the Court found that credible projections of post-petition operating profits provided the secured creditor with adequate protection. 193 B.R. at 717-718.

**Establishing Notice Procedures and Scheduling Final Hearing**

32.     The Debtor will: (a) immediately provide notice of the hearing on this Motion to: (i) the United States Trustee for the Eastern District of Michigan, (ii) Pendulum, (iii) counsel for the SBA, (iv) Corporation Service Company and CT Corporation System, (v) the Debtor's 20 largest unsecured creditors, and (vi) all other parties who were required to be served under Fed. R. Bank. P. 4001(d), and (b) give such notice by any one of the following methods which is available: (i) ECF service; (ii) personal service; (iii) overnight mail; (iv) facsimile, or (v) e-mail. In light of the nature of the relief requested, the Debtor submits that no other or further notice is required.

33.     The Debtor further respectfully requests that the Court schedule the Final Hearing and authorize it to serve copies of any entered Interim Order, which fixes the date, time and manner for the filing of objections, to: (i) the United States Trustee for the Eastern District of Michigan; (ii) the Debtor's 20 largest unsecured creditors; (iii) Pre-Petition Lenders or their counsel; and (iv) any other party that has filed, prior to such date, a request for notice with this Court, via ECF or first class mail. The Debtor requests that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001.

34.     No previous request for the relief sought herein has been made to this Court or any other court.

**WHEREFORE,** the Debtor respectfully requests that the Court enter an order, substantially in the form of attached, granting the relief requested in this Motion and granting such further relief as the Court deems appropriate.

Steinberg Shapiro & Clark

/s/ Mark H. Shapiro (P43134)
Attorney for PB Michigan, LLC
25925 Telegraph Road, Suite 203
Southfield, MI 48033
(248) 352-4700
shapiro@steinbergshapiro.com

Date: September 28, 2023

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

PB Michigan, LLC,                          Case No.  23-48504
                                            Chapter 11

       Debtor.
_____/

**ORDER GRANTING DEBTOR'S FIRST DAY MOTION FOR INTERIM
AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO USE CASH
COLLATERAL; (II) PROVIDING ADEQUATE PROTECTION TO THE
PRE-PETITION LENDERS; AND (III) SCHEDULING A FINAL HEARING**

Upon consideration of the Debtor's *First Day Motion for Interim and Final
Orders (I) Authorizing the Debtor to Use Cash Collateral; (II) Providing Adequate
Protection to the Pre-Petition Lenders; and (III) Scheduling a Final Hearing* (the
"Motion"), upon consideration of the *Declaration of Allison LeMay* (the "LeMay
Declaration"); the Court having jurisdiction pursuant to sections 157 and 1334 of
Title 28 of the United States Code to consider the Motion and the relief requested
therein; venue being proper in this Court pursuant to sections 1408 and 1409 of
Title 28 of the United States Code; and this matter being a core proceeding within
the meaning of section 157 of Title 28 of the United States Code; and the Court
having determined that the relief sought in the Motion is in the best interest of the
Debtor, its creditors, and all parties-in-interest; and the Court having heard
sufficient evidence and the statements of counsel regarding the Motion and having

determined that the legal and factual bases set forth in the Motion and attested to in the LeMay Declaration establish just cause for the relief granted herein;

IT APPEARS, AND THE COURT HEREBY FINDS that:

A.    On September 27, 2023 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtor has continued in possession of its assets and has continued to operate its business as a debtor-in-possession pursuant to sections 1107(A) and 1108 of the Bankruptcy Code.

B.    The Debtor requires the use of the Cash Collateral for the maintenance and preservation of its assets, and for the operation of its business and the payment of business expenses in the ordinary course.

C.    The relief provided herein is necessary, essential, and appropriate for the continued operation of the Debtor's business and the management and preservation of its assets and is otherwise necessary to avoid immediate and irreparable harm to the Debtor and its estate pending a final hearing on the Motion.

NOW THEREFORE, IT IS HEREBY ORDERED that:

1.    The Motion is granted.

2.    All capitalized terms not defined in this Order shall have the meanings ascribed to them in the Motion.

3.    The Debtor is authorized to use Cash Collateral and grant adequate protection in accordance with the terms of the Motion.

4.    The amount of Cash Collateral necessary for the Debtor to use to avoid immediate and irreparable harm before the date of the final hearing or the date this Order becomes a final order in the absence of a timely objection and final hearing is $35,000 to pay the immediate operating expenses of the Debtor's business for the 30 days following the Petition Date, as set forth in the Budget. The Debtor's authorized use of Cash Collateral is limited to that amount prior to the entry of a final order authorizing the Debtor to use Cash Collateral or the time this Order becomes a final order.

5.    The Debtor is authorized to segregate in a Debtor-In-Possession account $300 per week earmarked for the payment of Professional Fees, commencing no later than October 8, 2023, and on the first of each week thereafter. The segregated funds for Professional Fees (the "Segregated Funds") will remain property of the estate until such time that fees are allowed under 11 USC § 330, and such funds shall be free and clear of the liens, claims and interest of any secured creditor.

6.    Pendulum Finance, the United States Small Business Administration, and any other secured creditors that may claim an interest in the Cash Collateral of the Debtor, to the extent that the Debtor uses such Cash Collateral and does not

replace it, are hereby granted replacement liens in all types and descriptions of collateral that were secured by the applicable pre-petition loan documents, which are created, acquired, or arise after the Petition Date except the Segregated Funds, but only to the extent of any diminution in the value of such Cash Collateral, to the extent that there is any diminution.

7.     The Debtor shall, within twenty-four (24) hours following the entry of this Order, serve copies of this Order and the Debtor's motion for entry of this Order with all attachments on (i) the United States Trustee for the Eastern District of Michigan; (ii) all secured creditors; (iii) the Debtor's 20 largest unsecured creditors; (iv) all other parties who are required to be served under Fed.R.Bankr.P.4001(d); and (v) any other party that has filed, prior to such date, a request for notice with this Court, via ECF or first class mail;.

8.     All parties seeking to object to this Order must file a written objection within fourteen (14) days after the entry of this Order.

9.     If an objection is timely filed, the final hearing on this Order will be held before the Honorable Lisa S. Gretchko, United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, 211 W. Fort Street, Detroit, Michigan 48226, Courtroom 1975, on the ____ day of _____, 2023, at _____ to consider such objections.

10.     If no timely objections are filed, then this Order will become a final order without a further hearing, and the Debtor will be authorized to spend for those expenses referenced in the Motion, as well as any other expenses necessary for operating the business in the ordinary course going forward.

11.     The Debtor's authority to use Cash Collateral shall continue until otherwise ordered by this Court.

# EXHIBIT A

| PB Michigan LLC | Week Ending: | 10/8/23 | 10/15/23 | 10/22/23 | 10/29/23 | 11/5/23 | 11/12/23 | 11/19/23 | 11/26/23 | 12/3/23 | 12/10/23 | 12/17/23 | 12/24/23 | 12/31/23 | 1/7/24 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rolling 13-Week Cash Forecast | Oct 1st | | | | | | | | | | | | | | |
| **DIRECT CASH FLOW** | | | | | | | | | | | | | | | |
| *Cash Inflows from Operations* | | | | | | | | | | | | | | | |
| A/R Receipts | 1000 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Projected Cash Receipts | | 10,000 | 8,500 | 10,000 | 8,500 | 10,000 | 8,500 | 10,000 | 8,500 | 10,000 | 8,500 | 10,000 | 8,500 | 10,000 | 8,500 |
| Detroit promissory note payment | | | | | 2,030 | | | | | 2,030 | | | | | |
| *Total Cash Inflows from Operations* | | 10,000 | 8,500 | 10,000 | 10,530 | 10,000 | 8,500 | 10,000 | 8,500 | 12,030 | 8,500 | 10,000 | 8,500 | 10,000 | 8,500 |
| *Cash Outflows from Operations* | | | | | | | | | | | | | | | |
| Subcontractors | | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 |
| Pay LeMay | | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| Pay Betcher | | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| Credit card processing fees | | 400 | 350 | 400 | 350 | 400 | 350 | 400 | 350 | 400 | 350 | 400 | 350 | 400 | 250 |
| Royalty 9% | | 900 | 720 | 900 | 720 | 900 | 720 | 900 | 720 | 900 | 720 | 900 | 720 | 900 | 720 |
| DTE | | 460 | | | | 460 | | | | 460 | | | | 460 | |
| Internet/phone | | | | 171 | | | | 171 | | | | 171 | | | |
| Rent | | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| Professional Fees | | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| Supplies | | | | 150 | | | | 150 | | | | 150 | | | |
| Misc retail/socks | | | | 300 | | | | 300 | | | | 300 | | | |
| **SUBTOTAL - NON-ACCOUNTS PAYABLE PAYMENT** | | 8,860 | 7,720 | 8,571 | 7,720 | 8,860 | 7,720 | 8,571 | 7,720 | 8,860 | 7,720 | 8,571 | 7,720 | 8,860 | 7,620 |
| | | 8,860 | 7,720 | 8,571 | 7,720 | 8,860 | 7,720 | 8,571 | 7,720 | 8,860 | 7,720 | 8,571 | 7,720 | 8,860 | 7,620 |
| | | 1,140 | 780 | 1,429 | 2,810 | 1,140 | 780 | 1,429 | 780 | 3,170 | 780 | 1,429 | 780 | 1,140 | 880 |
| | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| *Net Cash Flows from Financing Activities* | | | | | | | | | | | | | | | |
| **NET DIRECT CASH FLOWS** | | $ 1,140 | $ 780 | $ 1,429 | $ 2,810 | $ 1,140 | $ 780 | $ 1,429 | $ 780 | $ 3,170 | $ 780 | $ 1,429 | $ 780 | $ 1,140 | $ 880 |